## R. S. NEWBOLD & SON CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5698.    Promulgated June 23, 1927.

Petitioner established that drawings and patterns were capital assets having a useful life of at least 20 years, and also proved the cost thereof. *Held*, that the depreciated cost of the drawings and patterns should be included in invested capital and depreciation allowed at 5 per cent per annum, regardless of the practice of the petitioner of treating such costs as operating expenses.

*Virgil Y. Moore, Esq.*, for the petitioner.
*A. H. Fast, Esq.*, for the respondent.

This is a proceeding for the redetermination of deficiencies in income and profits taxes for the calendar years 1917 to 1920, inclusive,

in the respective amounts of $1,197.68, $2,051.65, $3,707.39, and $27.25, a total of $6,983.97. At the hearing petitioner abandoned an allegation of error respecting the respondent's failure to include in invested capital the claimed value of assets paid in for stock in excess of the par value of stock issued therefor. The remaining two issues are whether or not the cost of patterns and drawings may be included in invested capital, and if so, the rate of depreciation applicable to such patterns and drawings.

FINDINGS OF FACT.

The petitioner is a Pennsylvania corporation with its principal office at Norristown. It was incorporated in 1895 and took over the assets and assumed the liabilities of the former individual owner of the business. Its authorized capital stock was $100,000, of which $75,000 was issued to the former owner for property conveyed to the petitioner, and the remaining $25,000 was sold for cash.

The business of the petitioner, which is that of manufacturing heavy mill machinery, was founded by R. S. Newbold about 1852. A part of the assets taken over by the petitioner consisted of drawings and patterns used by its predecessor in the manufacture of machinery. The few changes in the past 40 years in the type of machinery manufactured by the petitioner have been mostly incidental, such as the size and capacity and from belt to motor drive. The useful life of such machinery is from 30 to 40 years.

The petitioner maintained both a drawing room, in which were employed from six to eight draftsmen, and a pattern room, in which it employed at times as many as ten pattern makers. After the preparation and use of a drawing and a pattern for an original order of machinery, both are stored by the petitioner for future use. It is frequently called upon by customers to replace parts or whole machines, which in some cases it had manufactured 15 or 20 or even 30 years before. It also often receives orders for a similar machine from other customers. In practically all such cases it is able to and does use the original drawings and patterns with such changes as are found necessary. When an order is received for a replacement or a machine similar to one theretofore made the drawing-room employees remove from storage the original drawing and a draftsman notes thereon the needed changes. This drawing is then sent to the pattern room and the original pattern is located and taken from storage and patterns are made for such additional parts as are needed. Due to the fact that few changes are made in the type of machinery manufactured by the petitioner, it is seldom that entirely new patterns and drawings are required. The cost of new drawings and patterns is a considerable item in the manufacture of

a machine and the large stock of the same which the petitioner has on hand constitutes an important factor in enabling it to meet competition. Competition in the field of the petitioner's business is so keen that often the petitioner expects but little profit on the first machine for which new drawings and patterns are made, and depends for its profit on subsequent orders for which the same drawings and patterns can be used.

The patterns acquired by the petitioner in 1895 occupied two floors of a building about 30 by 20 feet in size. Later an additional large building with two floors was acquired and filled with accumulated patterns. In 1910 the petitioner erected, at a cost of $10,000, a corrugated iron building, 100 by 120 feet in size, for the storage of patterns. Five floors in this building were filled with patterns. In addition to these the petitioner has two brick buildings and a part of another building filled with its patterns, making a total of six buildings used in whole or in part for pattern storage.

Only once has the petitioner discarded any patterns. That occurred about 1905, when in enlarging its plant it was necessary to cut through one of the buildings in which patterns were stored. At that time a number of the oldest patterns, all of which were made prior to 1895, were discarded. Within a week thereafter it received an order for a piece of machinery the pattern for which had been discarded. Since that time it has retained and stored all patterns.

The drawings have accumulated to a number in excess of 10,000. They are stored flat and occupy 56 drawers. None have ever been discarded.

The petitioner carried insurance on both the drawings and patterns. The insurance was increased from time to time until in 1919 it amounted to $30,000 on the drawings and $50,000 on the patterns. About 1921 it purchased a photostat machine at a cost of $1,500, made photostatic copies of all its drawings and placed the copies in a safe away from the storage room. Since then all drawings have been photostated as made and the copies stored in the safe. These steps were taken as additional precautions against loss of the drawings by fire.

The cost to the petitioner of its drawings over the period 1895 to 1916, inclusive, was $116,769.53, and the cost of its patterns $124,421.01. The drawings and patterns have an average useful life of 20 years. Accumulated depreciation on both drawings and patterns at the rate of 5 per cent over the period 1895 to 1916, inclusive, amounts to $119,185.73. The cost in 1917 of drawings was $6,132.04 and of patterns $10,485.73.

During the entire period from 1895 to and including the taxable years here involved petitioner charged the cost of drawings and

patterns to expense. This method of accounting was adopted because the officers of the company objected to any bookkeeping procedure which would increase the capital over the original amount of $100,000. However, in its return for the year 1917 the petitioner claimed the depreciated cost of patterns and drawings as an item of invested capital. The Commissioner, in a letter dated February 14, 1924, advised the petitioner of the computation of its tax liability for 1917 by allowing the inclusion in invested capital of the cost of patterns and drawings in the amount of $122,004.81. For the year 1918 the petitioner claimed the cost of patterns and drawings as a deduction from income, believing that it had the right to do so under the Commissioner's regulations, and protested against the action of the Commissioner as set forth in his letter of April 10, 1924, in adding such cost to invested capital. Subsequently the Commissioner disallowed the cost of patterns and drawings as a capital item for the years 1917 to 1920, inclusive, and on that basis computed the deficiency from which this appeal is taken.

OPINION.

ARUNDELL: The petitioner has amply established that its patterns and drawings were exceedingly valuable assets in the operation of its business and the producing of its income. Officers who have been with the company for many years expressed the opinion that in case of the destruction of the drawings and patterns it would be forced to go out of business. They were regarded of such value that the petitioner constructed special fireproof storage facilities, carried $80,000 insurance, and as an additional precaution phostostated all of its drawings and stored the photostats in a safe.

The petitioner has also fully established that the drawings and patterns had a useful life of at least 20 years. Many of them have been in use a longer period, some with no alterations and others with such changes as are necessary to meet incidental changes in the type of the machine manufactured. It was testified by the president of the petitioner, who has at various times exercised supervision over all departments, that "a couple of hundred" castings could be made from one pattern, and it was seldom that orders were received for that number. Based upon the evidence, our opinion is that 20 years represents the useful life of the drawings and patterns and depreciation should be allowed at the rate of 5 per cent per year.

The cost of drawings and patterns to the petitioner for the period 1895 to December 31, 1916, was $241,190.54, and the depreciation sustained during the same period at the rate of 5 per cent amounts to $119,185.73, leaving a net value of $122,004.81, which should be included in invested capital for the year 1917. During the year 1917 the petitioner made additional drawings and patterns at a cost of

$16,617.77, and sustained depreciation in the amount of $12,335.33, making a net amount of $126,287.25 to be included in invested capital for the year 1918.

During its early years from 1895 to 1908 the petitioner did not segregate drawing-room and pattern costs, but carried them in one account. In making its proof of cost of patterns and drawings it arbitrarily allocated to each of the two items 50 per cent of the total cost. This method, of course, does not establish accurately the cost separately of the two items, but as we have found that in each case the assets are capital items and subject to the same rate of depreciation, this failure to allocate costs in the early years does not affect the result.

It is a matter of little consequence that the petitioner claimed the right in one year to capitalize the cost of drawings and patterns and in another year sought to deduct such costs as expenses. We have found that the costs should have been capitalized and the fact that they were erroneously treated as expenses does not preclude the petitioner from now correcting its error. *Appeal of Goodell-Pratt Co.*, 3 B. T. A. 30.

*Judgment will be entered on 15 days' notice, under Rule 50.*